## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PAUL WEST,                                 :

     *Plaintiff,*                          :                  DKT No.: 20 -1210

                                            :

v.                                          :

CITY OF HARTFORD; JASON                     :
THODY; RAFAEL MEDINA;                       :
SONIA WATSON; DUSTIN                        :
RENDOCK; IAN POWELL; KEVIN                  :
O'BRIEN,                                    :

     *Defendants.*                       :                  August 19, 2020

### COMPLAINT

*"Every time we turn our heads the other way when we see the law flouted, when we tolerate what we know to be wrong, when we close our eyes and ears to the corrupt because we are too busy or too frightened, when we fail to speak up and speak out, we strike a blow against freedom and decency and justice."* – Robert F. Kennedy

1.      This is an action to seek some measure of justice for an outstanding public servant who had the moral courage to refuse to turn his head the other way and paid for it when he became the subject of a crusade of retaliation and racial animus that ensured that he never played on a level playing field again in his career as one of Hartford's finest. This action seeks monetary damages for retaliation, discrimination, and the creation of a hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 1981, 1983, and Conn. Gen. Stat. § 46a-60 as well as monetary damages for invasion of privacy.

### PARTIES

2.      The Plaintiff, Paul West, is an African-American adult resident of the State of Connecticut.

1

3.     The Defendant, the City of Hartford, is a Connecticut municipality incorporated in and under the laws of Connecticut, and it employs more than one hundred people.

4.     Chief Jason Thody is the chief of the Hartford Police Department. He is sued in his official capacity only.

5.     Assistant Chief Rafael Medina is an assistant chief of the Hartford Police Department. He is sued in both his official capacity and his personal capacity.

6.     Deputy Chief Sonia Watson is a deputy chief of the Hartford Police Department. She is sued in both her official capacity and her individual capacity.

7.     Deputy Chief Dustin Rendock is a deputy chief of the Hartford Police Department. He is sued in his official capacity only.

8.     Captain Ian Powell is a captain of the Hartford Police Department. He is sued in his official capacity only.

9.     Lieutenant Kevin O'Brien is a lieutenant of the Hartford Police Department. He is sued in his official capacity only.

**JURISDICTION**

10.     Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343 as well 42 U.S.C. §§ 1981, 1983, and 1988.

**FACTUAL ALLEGATIONS**

***An Accomplished Public Servant***

11.     The Plaintiff, Paul West, has been, and still is, employed by the City of Hartford in its police department since July 7, 2002.

2

12.     Since 2002, Mr. West has risen through the ranks of the Hartford Police Department and is currently a Lieutenant with eligibility to be promoted to Captain and/or a chief's position.

13.     Along the way, Lt. West has acquired an impressive array of awards that speak to both his abilities and his devoted service to his community.

14.     Lt. West holds a Master's Degree in Public Administration from the University of Connecticut and a Bachelor's of Science in Human Services with a Minor in Criminal Justice in Springfield College. In 2018, he also obtained a Graduate Certificate in Police Executive Leadership from the University of Louisville's Southern Police Institute where he was named a Dean's Scholar and compiled a perfect academic record.

15.     Lt. West has also been a model police officer, scoring exceptionally well on his promotional tests and compiling a record free of discipline and misconduct, save for one thirty-day suspension in 2003.

16.     Consequently, by January 2016, Lt. West was assigned to start, build, and command the Hartford Police Department's Recruitment Division by then Chief James Rovella.

17.     He is eligible to be promoted to a chief's position and or a captain's position.

### *Discrimination Begins To Rear Its Head*

18.     While Lt. West was attending his Graduate Certificate program in Kentucky during April 2018, Assistant Chief Rafael Medina (Latino) and then Assistant Chief Jason Thody (Caucasian) began to restructure the division that Lt. West commanded without consulting him – a move that clearly fell out of the standard process that the Hartford Police Department employed.

3

19.     Mr. Medina and Mr. Thody added a Sergeant Rodney to what had previously been a two-person unit, causing significant confusion as to the chain of command and areas of responsibility.

20.     When Lt. West returned from Kentucky in May 2018, Assistant Chief Medina and Deputy Chief Rendock encouraged Sergeant Rodney to circumvent Lt. West and report directly to them in violation of the chain of command and in marginalization of Lt. West's authority and responsibilities.

### *Lt. West Witnesses Sexual Harassment & Attempts To Handle It Through The Chain of Command.*

21.     On Saturday, May 26, 2018, one of Lt. West's subordinates, Recruitment Officer Kelly Baerga, asked him to accompany her and Sergeant Rodney to a recruitment event in Bridgeport, Connecticut.

22.     Lt. West did attend the recruitment event where he personally witnessed Sergeant Rodney engage in shockingly explicit, overt, and demeaning sexual harassment toward Officer Baerga even though he was unaware at the time that she was the target and he was not aware that she had heard the harassment.

23.     Lt. West immediately intervened and admonished Sergeant Rodney to stop his behavior and terminate his comments. He then changed the subject to avoid further continuation of the dialogue in a public space.

24.     On Monday, May 28, 2018, Officer Baerga brought a sexual harassment complaint against Sergeant Rodney to Lt. West.

25.     On or about May 29, 2018, Lt. West asked the Chief of the Hartford Police Department, Chief Rosado, for an opportunity to meet with him about an important and

urgent matter – namely, Officer Baerga's sexual harassment complaint. Chief Rosado scheduled a meeting with Lt. West for the afternoon of May 29, 2018.

26.    On or about the afternoon of May 29, 2018, Lt. West met with Chief Rosado and Assistant Chief Medina for a comprehensive conversation. Lt. West immediately reported the sexual harassment complaint, and Chief Rosado instructed him to document it and provide his documentation to Assistant Chief Medina. They also advised Lt. West that Sgt. Rodney would be removed immediately from the Recruiting Division.

27.    After Lt. West reported the sexual harassment to Chief Rosado and Assistant Chief Medina, he left the meeting, but Assistant Chief Medina and Deputy Chiefs Rendock and Watson met with him the same day. Assistant Chief Medina informed him that, effective immediately, he was being relieved of command of the recruiting division without any explanation. This removal left Officer Baerga under the direct command of the person that she complained sexual harassed her for three or four days before Sgt. Rodney was finally removed from the Recruiting Division.

28.    Subsequently, Deputy Chiefs Watson and Rendock contacted Lt. West, severely chastised him for attending the recruiting event, and threatened to withhold his pay for working at the recruiting event without offering him an explanation of any policies that he had broken.

29.    Nonetheless, Lt. West prepared an interdepartmental memorandum documenting the sexual harassment to Assistant Chief Medina dated May 30, 2018 and submitted it as requested.

### *Lt. West's Illness & Harassment By Hartford Police Officials.*

30.    During the first week of June 2018, Lt. West contracted a serious illness.

31.     He had a scheduled three-week vacation due to begin during the second week of June 2018, and he made a request to Deputy Chief Watson to start his vacation early rather than call out sick.

32.     Deputy Chief Watson granted the request because Assistant Chief Medina had eliminated all of Lt. West's primary command responsibilities without any explanation and had been using him as a substitute area commander, thus leaving him in limbo with no permanent assignment.

33.     Lt. West's illness then became life-threatening, and he was hospitalized for an extended period.

34.     Deputy Chief Watson contacted Lt. West the day after she approved his sick time and indicated that Assistant Chief Medina had rescinded her approval of his vacation and ordered him to use sick time.

35.     Assistant Chief Medina also demanded a doctor's note from Lt. West within 24 hours of his absence even though Lt. West's collective bargaining agreement stated that no doctor's note is required until after a three-day period away from work.

36.     Assistant Chief Medina also ordered Deputy Chief Watson to research all local hospital registries to ascertain if Lt. West was hospitalized and he ordered her to go Lt. West's hospital to verify his admittance physically by entering into his private hospital room uninvited and unapproved despite Deputy Chief Watson and Lt. West not being personal friends.

37.     At the behest of Assistant Chief Medina, Deputy Chief Watson also repeatedly harassed the bed-ridden Lt. West with numerous texts and phone calls demanding timetables regarding how long he would be hospitalized, when he expected

6

to submit a doctor's note, when he would be returning to work, and his personal health status.

38.     Lt. West subsequently requested his union to intervene to protect him from Assistant Chief Medina and Deputy Chief Watson. Lt. West's union did intervene and asked both Medina and Watson to allow Lt. West to recover in peace.

39.     Shortly after Lt. West's union intervened, the Hartford Police Department took Lt. West's department-issued phone, office, and vehicle and assigned them to another officer even though it did not terminate Lt. West's employment.

### *Lt. West Returns To Work & Faces Further Racial Discrimination From Assistant Chief Medina.*

40.     In August 2018, Lt. West returned to work, and he made a conscious effort to avoid Assistant Chief Medina because of his obvious dislike for Lt. West.

41.     On September 2, 2018, Lt. West was serving as the headquarters commander when a double homicide occurred at 1:24 AM at 267 Hillside Avenue, Hartford, Connecticut.

42.     Pursuant to Hartford Police Department policy, the headquarters commander must notify a chief in the event of a homicide.

43.     Lt. West first attempted to notify the on-duty chief, Assistant Chief Thody, but Assistant Chief Thody did not answer his phone. Because Deputy Chief Buyak was on vacation, Lt. West had no alternative except to call Assistant Chief Medina for notification purposes.

44.     As Lt. West attempted to relay the requisite pertinent information about the homicide to Assistant Chief Medina, Medina cut him off with a profanity-laced response, telling him that he would get his information from a white male lieutenant who was not

7

even on the scene of the double homicide. The white male lieutenant's information would have come from Lt. West himself or one of the Sergeants under Lt. West's command.

45.     After this incident, Lt. West noticed a pattern where Assistant Chief Medina would treat him differently than his white counterparts or his white subordinates, going out of his way to repeatedly embarrass him publicly and interacting with him like he was a dog instead of a fellow police officer.

### Lt. West Seeks Various Positions & Promotion & Is Denied.

46.     Before Lt. West returned to work after recovering from his illness in August 2018, he spoke to Chief Rosado about where he would be working. Lt. West asked to be placed in either Internal Affairs or Planning and Accreditation, which had open positions. Chief Rosado said that he would talk to Assistant Chief Medina, but he also indicated that he was thinking of putting Lt. West back into patrol work.

47.     On August 15, 2018, Deputy Chief Buyak informed Lt. West that he was assigned to be Headquarters Commander in Patrol for the second shift. Lt. West then made a request to be moved to third shift so that he did not have to be in contact with Assistant Chief Medina, and his request was granted.

48.     In or about September 2017, Lt. West submitted a proposal to consolidate several programs to provide sufficient resources for the Recruitment Division. Then Captain Jason Thody ignored and then vetoed his recommendation, but, in or about September 2018, then Assistant Chief Thody resurrected Lt. West's proposal, but placed a Latino woman in charge instead of Lt. West.

49.     On or about November 20, 2018, Lt. West submitted a memorandum to Chief Rosado expressing his interest in an open Vice, Intelligence, Narcotics Division

Commander. Chief Rosado never responded to Lt. West's application. Lt. West subsequently contacted Human Resources, and he was included in the interview process as the only African American candidate. After the conclusion of the interview process, the position remained unfilled, and the unit was temporarily commanded by a white male sergeant who had just completed probation and discipline for using excessive force. The position was permanently filled by a white male lieutenant who was also on probation and who had not even applied for the position or taken part in the interview process.

50.     Furthermore, while Lt. West was completing his graduate certificate program in Louisville in April 2018, the department announced a captain's test. Even despite the rigorous demands of his graduate program, Lt. West worked hard to become eligible for promotion to Captain.

51.     On August 14, 2018, he requested a comprehensive review of his examination results for the Captain Promotional Exam as he was entitled to and rescoring for accuracy.

52.     Despite multiple requests, Lt. West never received his rescored examination scores in violation of his collective bargaining agreement.

53.     The failure to rescore Lt. West's test results cost him the opportunity to be promoted to captain, which violated the federal consent decree in *Cintron v. Vaughn*.

54.     Assistant Chief Jason Thody was responsible for delaying the test results, and his delay was motivated in part by racial animus toward Lt. West, which was manifested by previous statements where he expressed extreme displeasure toward the Hartford City Council's efforts to make the police department more diverse. His statements included telling Lt. West that his hard-earned Master's degree "didn't mean

9

shit" and telling Lt. West that the City Council was racist and stupid for wanting to promote African-Americans.

55.     On or about December 19, 2018, Deputy Chief Buyak retired, and Lt. West applied for his position. Despite a federal consent decree, *Cintron v. Vaughn*, requiring a certain number of minority candidates to be promoted, Lt. West was not promoted despite being the only African-American candidate to apply. Instead, Assistant Chief Medina responded to his application by ordering a captain to reopen an investigation into Lt. West that had formerly been conducted by Deputy Chief Buyak and that had cleared Lt. West.

56.     The Hartford Police Department then submitted a request through its budgetary process to hire a Deputy Chief from an outside agency despite never doing so in its history, citing inexperience in its command staff, ignoring Lt. West's 11 or more years in a command position, and disregarding the recommendation of the Greater Hartford African American Alliance to the Mayor and Chief Rosado endorsing Lt. West as imminently qualified for Deputy Chief.

### *Lt. West's Request For A Earned Leave Day To Deal With A Personal Emergency Results In Harassment.*

57.     On or about March 2, 2019, Lt. West called the on-duty headquarters' commander to request an earned leave day due to a personal emergency – a standard procedure. The headquarters' commander immediately granted the time off, and Lt. West thanked her, and they hung up.

58.     Within minutes of hanging up, the headquarters commander contacted Lt. West and informed him that she had received a call from Captain Gabe Laureano stating that Chief Thody had seen that he had used earned leave for the day off and that his request was denied by a combination of Captain Laureano and Chief Thody. The

10

headquarters commander informed Lt. West that he would have to use sick-time, which would force him off-line.

59.     Lt. West immediately called Captain Laureano to explain that he was not sick and that he had a personal emergency. Captain Laureano informed Lt. West that the entire administration had something against Lt. West and that he had been the only one sticking up for him. Lt. West thanked him for his support, but Lt. West told him that he could not force him out sick when he was not sick. Captain Laureano reacted angrily and hung up the phone on Lt. West while they were still talking.

60.     The headquarters commander soon informed Lt. West that his day off had been returned to earned leave.

61.     On March 24, 2019, Captain Laureano ordered Lt. West to provide a report describing why he took the day off – an unprecedented action. Nonetheless, Lt. West complied and provided the report.

### *A Family Tragedy Is Turned Against Lt. West.*

62.     Lt. West's sister was convicted more than 20 years ago and is incarcerated for committing a murder despite maintaining her innocence.

63.     Ms. West became the subject of a documentary that sensationalized the murder and portrayed her as a cold-blooded killer.

64.     Despite the Defendants' knowledge that Lt. West carries a troubling tragedy with him, they fostered an environment where Lt. West's sister became gossip fodder and training officials went out of their way to mention Lt. West's sister in an unfavorable manner.

65.     After the documentary was released, the Defendants watched it on their work computers during work hours and gossip about it regularly in the workplace despite their knowledge that it was an extremely painful tragedy for Lt. West.

### *Old Investigations Of Lt. West Are Reopened & Lt. West Is Subject To Manipulation & Harassment.*

66.     In October 2017, the City of Hartford Human Resources department opened an investigation into Lt. West based on the accusations of Officer Tiffany Wilson.

67.     During the six-month investigation, the Human Resources Department found that Officer Wilson herself admitted that she could not provide any details to substantiate her accusations against Lt. West.

68.     Consequently, on April 23, 2018, the Human Resources Department closed the investigation.

69.     In January 2019, Chief Thody and/or Assistant Chief Medina ordered the Wilson investigation to be reopened despite it having been previously closed and no new information coming to light.

70.     In March 2019, Lt. West attended a prestigious FBI training session in Cheshire with other distinguished police administrators from across the New England area, including seven members of the Hartford Police Department.

71.     During the lunch break, then Assistant Chief Jason Thody arrived and summoned Lt. West by yelling for him in front of his classmates. He then loudly ordered Lt. West to report to Internal Affairs for an investigation into his conduct in one previously closed cases and one case that they had almost a year to interview him for.

72.     The Internal Affairs interview occurred on the spot at the FBI training – an unprecedented step designed specifically to retaliate against and harass Lt. West while embarrassing him in front of distinguished regional law enforcement officials.

73.     On or about March 26, 2019, Captain Ian Powell and Lt. O'Brien contacted Lt. West and asked him to come in for a follow-up interview for one of the investigations on two specified days.

74.     Lt. West indicated that he would be out of town for his birthday on the dates that they offered and suggested two days within close vicinity to the days that they had suggested.

75.     Pursuant to the collective-bargaining agreement, Lt. West had utilized what was known as the "blue-slip" day off procedure to get approval for his vacation time and was scheduled to be off for six consecutive days.

76.     Instead of respecting Lt. West's already approved vacation time as required by the collective bargaining agreement and in an effort to carry out the retaliatory and harassment agenda of Chief Thody, Assistant Chief Medina, and/or their cohorts, Captain Powell and Lt. O'Brien intentionally manipulated Lt. West's blue slips to change the days that he was approved to take time off.

77.     They then informed Lt. West that he had to conduct the interview during his scheduled vacation time or he would be subjected to discipline.

78.     Despite Lt. West's union's intervention, Lt. West was forced to shorten his vacation in celebration of his birthday to comply with the interview date set by Captain Powell and Lt. O'Brien.

13

79.     When Lt. West arrived for his scheduled interview at 10 PM with his attorney, no one was present to conduct the interview, forcing Lt. West to incur attorney's fees for no avail.

### *The Investigation Of Lt. West's Sexual Harassment Complaint Takes A Hostile & False Turn.*

80.     On April 10, 2019, the Hartford Police Department held a press conference at the Hartford Police Department Headquarters to publicize the results of its internal investigation that it had conducted into the complaint that Lt. West had made regarding Sergeant Rodney's sexual harassment of Officer Baerga.

81.     The Hartford Police Department did not inform Lt. West or his attorney, Cynthia Jennings, of the results of the investigation or of the press conference.

82.     Lt. West's attorney, Cynthia Jennings, learned of the press conference through rumors and contacted Hartford city hall, which told her that the press conference was being held at city hall.

83.     Upon arriving at Hartford city hall, Attorney Jennings was told that the press conference was at the Hartford Police Department Headquarters.

84.     Attorneys Jennings made her way to Hartford Police Department Headquarters where she was denied entrance to the press conference despite members of the media being allowed.

85.     The Hartford Police Department announced that two officers were facing disciplinary consequences for violating the department's code of conduct. It subsequently released a report naming Lt. West and charging him with two counts of failure to properly supervise his subordinates and failure to make proper reports despite the internal affairs

investigator noting that Lt. West reported the harassment and made repeated attempts to stop it without making a public spectacle.

86.     So patently false were the Hartford Police Department's allegations against Lt. West that Officer Baerga issued the following statement to the media:

> It is absurd that Lieutenant Paul West, the only high ranking official in the Department who helped me and brought the Department's severe inaction to light on multiple occasions, would be retaliated against and threatened with discipline by the Internal Affairs Division, who is ironically under the direction of Chief Jason Thody. Lieutenant Paul West is the only Commander in the entire Command Staff who cared and tried to change the culture when Chief Jason Thody, Chief David Rosado, and Chief Rafael Medina sat idly by and took no action for nine months. If Mayor Bronin truly cares about our City, including Women, Minorities, and LGBTQ+ residents, then he will hold Chief Thody accountable for his inaction, his utter disregard for members of protected classes and for utilizing the Internal Affairs Division to clear himself of wrongdoing and place blame on the one person who helped.

87.     Nonetheless, officials from the City of Hartford could not wait to publicly lambast Lt. West as a convenient scapegoat for the failings of the Hartford Police Department.

88.     Lt. West has been threatened with discipline and has received no hearing, thus diminishing his chances for professional advancement both in the Hartford Police Department and across the country.

### *Lt. West's CHRO Complaints & Release of Jurisdiction*

89.     Lt. West initiated a number of complaints with the Connecticut Commission on Human Rights and Opportunities to seek redress for the grievances described above.

90.     He subsequently sought and received a release of jurisdiction for the three cases concerning the relevant facts above. *See* **Exhibit A.**

**The City of Hartford Has A History of Discriminating & Retaliating Against Lt. West Regarding Promotions.**

91.    In 2008, Lt. West sued the City of Hartford for discriminating and retaliating against him for performing better than his white counterparts on a promotional exam. *See West v. City of Hartford,* No. 3:10-cv-00796. That case settled in Lt. West's favor, but the City of Hartford has continued its discrimination against Lt. West even to the present day, albeit in a different fashion with different actors.

## COUNT ONE – RETALIATION IN VIOLATION OF TITLE VII AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

92.    Paragraphs 1 through 91 of this Complaint are hereby incorporated herein.

93.    It is an unlawful employment practice for an employer to discriminate against an employee for opposing any unlawful employment practice under Title VII or for making a charge of an unlawful employment practice. 42 U.S.C. § 2000e-3(a).

94.    Lt. West made a charge of sexual harassment against Sergeant Rodney for his treatment of a subordinate, Officer Baerga, to Chief Rosado of the Hartford Police Department, who instructed him to submit his complaint in writing to Assistant Chief Medina.

95.    Sergeant Rodney was a personal favorite of Assistant Chief Medina and Assistant Chief Thody.

96.    Within hours of communicating his charge to Chief Rosado, Lt. West was removed from command of the Recruiting Division that he had built from the ground up. He was subsequently harassed by Hartford Police officials while bedridden with a serious illness, was given unfavorable assignments, repeatedly passed over for desirable

assignments in favor of far less qualified individuals, denied promotion, and falsely named and disciplined for "failing to report" sexual harassment against Officer Baerga.

97.     Furthermore, the Defendants reopened previous investigations, which had cleared Lt. West, for the purpose of retaliating against and harassing him, and they manipulated his vacation time in contravention of his collective bargaining agreement to make his life as miserable as possible. They also exploited his family's personal tragedy to retaliate against him.

98.     The Defendants' actions constitute unlawful retaliation under Title VII. *See* 42 U.S.C. § 2000e-3(a).

## COUNT TWO – RETALIATION IN VIOLATION OF 42 U.S.C. §§ 1981, 1983 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

99.     Paragraphs 1 through 98 of this Complaint are hereby incorporated herein.

100.    The Defendants' actions constitute unlawful retaliation under 42 U.S.C. §§ 1981, 1983.

## COUNT THREE – DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

101.    Paragraphs 1 through 100 of this Complaint are hereby incorporated herein.

102.    Title VII prevents an employer from discriminating on the basis of race.

103.    Lt. West is African-American and belongs to a protected group under Title VII.

104.    Lt. West is a highly educated and experienced police officer with stellar academic credentials and a model career. He is more than qualified for his current position and for the positions to which he has applied and been denied for.

105.   The Defendants have engaged in a systematic effort to remove Lt. West from desirable command posts, harass him repeatedly even when he was bedridden with a life-threatening illness, stonewall his attempts to apply for promotion and more favorable command roles, and make him the scapegoat for their negligence in effectively responding to sensitive claims of sexual harassment because one of their favorites was involved.

106.   Furthermore, the Defendants reopened previous investigations, which had cleared Lt. West, for the purpose of harassing him, and they manipulated his vacation time in contravention of his collective bargaining agreement to make his life as miserable as possible. They also exploited his family's personal tragedy to retaliate against him.

107.   In removing Lt. West from desirable command roles, the Defendants repeatedly replaced or supplanted him with Caucasian or Hispanic officers who were far less qualified than he was.

108.   In harassing Lt. West repeatedly when he was bedridden with a life-threatening illness, the Defendants engaged in conduct that they never engaged in toward Caucasian or Hispanic officers.

109.   In stonewalling Lt. West's applications for promotion and more favorable command roles, the Defendants repeatedly passed over Lt. West – the only African-American candidate – in favor of far less qualified and experienced, Caucasian or Hispanic candidates including some who had not even applied or interviewed for the positions and were still the subject of discipline or probationary periods stemming from discipline.

110.   In making Lt. West the scapegoat for their negligence in handling a sexual harassment claim, the Defendants effectively ensured that Lt. West's chances for receiving future promotions – either in the Hartford Police Department or anywhere else in the country – were ruined.

111.   The Defendants repeatedly expressed on multiple occasions that they resisted the Hartford City Council's efforts to make the leadership of the Hartford Police Department more diverse and were vehemently opposed to Lt. West receiving advancement because he was an African-American who fit in with the City Council's desired diversity initiatives.

112.   The Defendants' conduct toward Mr. West constitutes illegal discrimination on the basis of race in violation of Title VII.

## COUNT FOUR – DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF 42 U.S.C. §§ 1981, 1983 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

113.   Paragraphs 1 through 112 of this Complaint are hereby incorporated herein.

114.   The Defendants' conduct toward Mr. West constitutes illegal discrimination on the basis of race in violation of 42 U.S.C. §§ 1981, 1983.

## COUNT FIVE – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

115.   Paragraphs 1 through 114 of this Complaint are hereby incorporated herein.

116.   The Defendants repeatedly harassed Lt. West when he was hospitalized and bed-ridden with a life-threatening illness to the point where his union had to intervene to stop the harassment so he could properly recover.

19

117. The Defendants confiscated Lt. West's department-issued vehicle, phone, and office and reassigned them to another officer – an unprecedented action toward an officer of his rank.

118. When Lt. West attempted to follow department procedures and notify Assistant Chief Medina of multiple major crimes, Assistant Chief Medina would routinely curse him out, yell at him, cut him off, and tell him that he would get his information from other officers who were not even on scene or from Lt. West's subordinates. Assistant Chief Medina also repeatedly confronted Lt. West publicly by yelling at him including in front of a victim's family at the hospital.

119. Lt. West's applications for promotions and open departmental positions were repeatedly ignored, and applying for the positions and the promotions became a job itself because of the multiple attempts that Lt. West needed to make. Lt. West's promotional exam results were also delayed by Assistant Chief Thody despite his repeated requests and his union's intervention, thus costing him a chance to be promoted to captain.

120. Furthermore, the Defendants reopened previous investigations, which had cleared Lt. West, for the purpose of harassing him, and they manipulated his vacation time in contravention of his collective bargaining agreement to make his life as miserable as possible.

121. The Defendants exploited Lt. West's personal tragedy concerning his sister and made it a regular subject of gossip despite knowing how disturbing it was to Lt. West.

122. The Defendants' actions were taken, at least in part, by their desire to prevent Lt. West from succeeding and advancing in his career because he is African-

American. The Defendants' actions constitute the creation of a hostile work environment in violation of Title VII.

### COUNT SIX – HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. §§ 1981, 1983 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

123.   Paragraphs 1 through 122 of this Complaint are hereby incorporated herein.

124.   The Defendants' actions constitute the creation of a hostile work environment in violation of 42 U.S.C. §§ 1981, 1983 because they were motivated, at least in part, by their desire to prevent Lt. West from succeeding and advancing in his career because he is African-American.

### COUNT SEVEN – RETALIATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

125.   Paragraphs 1 through 91 and 94 through 97 of this Complaint are hereby incorporated herein.

126.   Conn. Gen. Stat. § 46-60 prohibits retaliation against an employee for opposing any unlawful employment practice under the Connecticut Fair Employment Practices Act.

127.   The Defendants' actions constitute illegal retaliation in violation of Conn. Gen. Stat. § 46-60.

### COUNT EIGHT – DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

128.   Paragraphs 1 through 91 and 103 through 111 of this Complaint are hereby incorporated herein.

129.   Conn. Gen. Stat. § 46-60 prohibits discrimination against an employee on the basis of race under the Connecticut Fair Employment Practices Act.

21

130.   The Defendants' actions constitute illegal discrimination in violation of Conn. Gen. Stat. § 46-60.

## COUNT NINE – HOSTILE WORK ENVIRONMENT IN VIOLATION OF CONN. GEN. STAT. § 46a-60 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

131.   Paragraphs 1 through 91 and 116 through 121 of this Complaint are hereby incorporated herein.

132.   Conn. Gen. Stat. § 46-60 allows a claim of a hostile work environment under the Connecticut Fair Employment Practices Act.

133.   The Defendants' actions were taken, at least in part, by their desire to prevent Lt. West from succeeding and advancing in his career because he is African-American. The Defendants' actions constitute the creation of a hostile work environment in violation of Conn. Gen. Stat. § 46a-60.

## COUNT TEN – INVASION OF PRIVACY AGAINST THE CITY OF HARTFORD AND ASSISTANT CHIEF MEDINA & DEPUTY CHIEF WATSON (IN BOTH THEIR OFFICIAL AND PERSONAL CAPACITIES).

134.   Paragraphs 1 through 91 of this Complaint are hereby incorporated herein.

135.   When Lt. West was hospitalized and bedridden with a life-threatening illness, Assistant Chief Medina ordered Deputy Chief Watson to go to Lt. West's hospital to verify his admittance by physically entering into his hospital room unannounced, uninvited, and unapproved.

136.   Upon information and belief, Assistant Chief Medina and Deputy Chief Watson abused their authority as Hartford Police Officers to gain uninvited and unapproved access to Lt. West's hospital room despite knowing that he was sick and hospitalized.

22

137.   Lt. West did not solicit Deputy Chief Watson's visit, and he and Deputy Chief Watson are not personal friends.

138.   Furthermore, at the behest of Assistant Chief Medina, Deputy Chief Watson also repeatedly harassed the bed-ridden Lt. West with numerous texts and phone calls demanding timetables regarding how long he would be hospitalized, when he expected to submit a doctor's note, when he would be returning to work, and his personal health status.

139.   This harassment continued to the point where Lt. West had to seek the help of his union to put a stop to it so he could properly recover in peace.

140.   The Defendants' actions constitute an invasion of Lt. West's privacy designed to harass him.

### DAMAGES

141.   As to all counts, the Plaintiff seeks:

    A.   Compensatory and economic damages in an amount deemed fair, just, and reasonable;

    B.   Punitive damages;

    C.   Reasonable attorney's fees;

    D.   Such other relief as this Court deems fair and equitable.

### CLAIM FOR A JURY TRIAL

The Plaintiff claims trial by jury in this case.

THE PLAINTIFF

By: /s/ NORMAN A. PATTIS /s/
     NORMAN A. PATTIS
     PATTIS & SMITH, LLC
     383 Orange Street
     New Haven, CT 06511
     TEL: 203.393.3017
     FAX: 203.393.9745
     npattis@pattisandsmith.com
     ct13120