UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL WEST<br>    *Plaintiff*, | )<br>)<br>) | 3:20-cv-1210 (KAD) |
| v. | )<br>) | |
| CITY OF HARTFORD, JASON THODY,<br>RAFAEL MEDINA, SONIA WATSON,<br>DUSTIN RENDOCK, IAN POWELL, and<br>KEVIN O'BRIEN,<br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>) | DECEMBER 22, 2022 |

**MEMORANDUM OF DECISION
RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 35)**

Kari A. Dooley, United States District Judge:

    Plaintiff, Paul West, a lieutenant with the Hartford Police Department ("HPD"), commenced this action against the City of Hartford ("City") and several other HPD officers,[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*, 42 U.S.C. §§ 1981 and 1983, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, and invasion of privacy under Connecticut common law. Plaintiff alleges that he was discriminated against on account of his race and that he was retaliated against following his report of sexual harassment against a colleague by her supervisor. Pending before the Court is a motion for summary judgment filed by all defendants, which Plaintiff opposes, in part. For the following reasons, the motion for summary judgment is GRANTED.

**Relevant Facts**

---

[1] Plaintiff additionally names Jason Thody, Chief of HPD, Rafael Medina, then-Assistant Chief of HPD, Sonia Watson, Deputy Chief of HPD, Dustin Rendock, Deputy Chief of HPD, Ian Powell, current Deputy Chief and then-Captain of HPD, and Kevin O'Brien, current Captain and then-Lieutenant and Sergeant of HPD, as individual defendants. Def. LRS at 1–2, ¶¶ 3, 5, 6, 7, 8, 9.

The following facts are drawn from the parties' Local Rule 56(a)(1) Statements of Undisputed Material Facts ("LRS") and from the exhibits in the record. The facts set forth in the Defendants' LRS (ECF No. 36) are admitted by the Plaintiff (ECF No. 42-1) unless otherwise indicated.

Plaintiff, an African American male, began working for HPD in 2002. Def. LRS at 1 ¶ 1; Pl. Compl. at 2 ¶ 11. Plaintiff holds the rank of Lieutenant, serving as the Commander of the Recruitment Division from January 2016 to May 2018, and thereafter as the South District Commander. Def. LRS at 1, 5-6, ¶¶ 1, 19, 25; Pl. Compl. at 3 ¶ 16. As Commander of the Recruitment Division, Plaintiff supervised one employee, Officer Kelly Baerga. Def. LRS at 5 ¶ 19. From February through late April or early May 2018, Plaintiff attended training at the University of Louisville's Southern Police Institute ("SPI"). Def. LRS at 5 ¶ 21. On or about April 8, 2018, Sergeant Andrew Rodney was assigned to the Recruitment Division to supervise Officer Baerga while West was training at SPI. Def. LRS at 5 ¶ 22. Upon his return from SPI, Plaintiff informed Deputy Chief Rendock that the Recruitment Division did not need a Lieutenant, a Sergeant, and an officer. Def. LRS at 6 ¶ 24. Chief Rosado then decided to assign Plaintiff to the South District to cover for a Lieutenant who had an upcoming leave of absence, reasoning that the Recruitment Division did not need a Lieutenant to supervise one officer, and supervising officers engaged in crime prevention and suppression was a more effective use of Plaintiff. Def. LRS at 6 ¶¶ 24, 25. Plaintiff began shadowing the South District Commander, Lieutenant Powell, on or about May 15, 2018, and was assigned to the South District Commander position on May 24, 2018. Def. LRS at 6 ¶ 24.

On May 26, 2018, Plaintiff attended a recruitment event in Bridgeport with Officer Baerga and Sergeant Rodney. Def. LRS at 7 ¶ 27. According to Plaintiff, during this event, he witnessed

Sergeant Rodney sexually harass Officer Baerga. Def. LRS at 7 ¶ 27. On the morning of May 29, 2018, Plaintiff contacted Chief Rosado to schedule a meeting about what he "considered to be an important matter." Def. Ex. 3A, ¶ 11 (Pl. 01/23/2019 CHRO Complaint). It was Plaintiff's intent to inform Chief Rosado about the sexual harassment complaint "first thing in the morning," but Chief Rosado was not able to meet until later that afternoon. Def. LRS at 9 ¶ 32; Def. Ex. 3A, ¶ 11.

Plaintiff met with Deputy Chiefs Watson and Rendock that same morning, in which he was questioned about his attendance at the recruitment event in Bridgeport despite being no longer assigned to the Recruitment Division and was reminded that he was now Commander of the South District.[2] Def. LRS at 8 ¶ 30; Def. Ex. 3A, ¶ 16.

That afternoon, West met with Chief Rosado and Assistant Chief Medina and "told him about the sexual harassment complaint [by Officer Baerga against Sergeant Rodney] immediately." Def. LRS at 9 ¶ 32; Def. Ex. 3A, ¶ 11. Plaintiff was asked to put the allegations in writing and submitted a report according to those instructions on May 30, 2018. Def. LRS at 9 ¶ 32.

On June 4, 2018, the Plaintiff fell ill, requiring hospitalization, and therefore did not report to work as Commander of South District. Def. LRS at 9–10 ¶ 33. Deputy Chief Watson attempted to contact Plaintiff after a South District officer could not locate him. Def. LRS at 9–10 ¶¶ 33-34. Plaintiff later informed Deputy Chief Watson that he was ill and requested permission to begin a scheduled three-week vacation early. Def. LRS at 10 ¶ 35. On June 5, 2018, Deputy Chief Watson spoke again with Plaintiff. *Id.* Upon learning that Plaintiff planned to start his vacation early and

---

[2] The parties dispute whether this was a reminder, clarification, or the final determination that West would be South District Commander permanently, and thus, no longer within the Recruitment Division. For the purposes of this motion, the Court assumes that Plaintiff was formally transferred to the South District Commander position the morning of May 29, 2019.

take four weeks instead of the original three, Assistant Chief Medina instructed Deputy Chief Watson to tell him that he should use sick time. *Id.* On the third day of Plaintiff's absence, June 6, 2018, Deputy Chief Watson requested a physician's note from him, in accordance with the collective bargaining agreement, which requires a doctor's note after three days of absences. Def. LRS at 10–11 ¶ 36; Bowsza, ¶, Ex. C § 5.3 (Collective Bargaining Agreement). On June 12, 2018, Deputy Chief Watson visited Plaintiff at the hospital to bring him Family Medical Leave Act ("FMLA") paperwork and offered to prepare a memo on his behalf to request that his accrued vacation time be carried over into the next fiscal year.[3] Def. LRS at 11 ¶ 37. In total, while Plaintiff was in the hospital or out sick, Deputy Chief Watson contacted him about his illness seven times over the course of roughly a month: two messages on June 5, 2018, a text on June 6, 2018, a message on June 11, 2018, a message and a text on June 27, 2018, and a message on July 3, 2018. Def. LRS at 12 ¶ 41. After Plaintiff received the June 27, 2018 message, he texted Deputy Chief Watson that he was not up to talking, to which Deputy Chief Watson replied with a "check" symbol and wished him luck on his upcoming captain's examination. Def. LRS at 12 ¶ 42.

On June 28, 2018, Plaintiff took the examination for promotion to Captain. Def. LRS at 12-13 ¶ 43. Plaintiff did not study and did not expect to do well because of his health. *Id.* While Plaintiff passed the exam, he ranked last out of the nine individuals who passed. *Id.* There were only five vacant Captain positions, and thus, pursuant to the Hartford City Code, only the top seven candidates were considered by Chief Rosado for promotion. Def. LRS at 13 ¶ 44; Hartford, Conn., Code, §§ 2-377 & 2-378. Plaintiff attempted to have his exam rescored and requested information about the assessors but did not receive a rescore or the requested information. Def. LRS at 13 ¶¶ 45, 46.

---

[3] Plaintiff claims that he did not give Watson permission to enter his hospital room and denies that she completed paperwork on his behalf. Pl. LRS at 13–14 ¶¶ 37, 38, 39, 40.

4

In November 2018, Plaintiff submitted an expression of interest for the open Vice, Intelligence, and Narcotics ("VIN") Division Commander position. Def. LRS at 17 ¶ 61. When evaluating candidates, HPD considers factors such as education, training, experience, disciplinary history, and attendance. Def. LRS at 17 ¶ 62. Plaintiff had the most sustained discipline record of the candidates for VIN Commander, including discipline related to potential dishonesty. *Id.* Plaintiff was also the only candidate who used notes during the interview. *Id.* Plaintiff and seven other Lieutenants were interviewed, but were not selected, for the position. *Id.* On or about February 17, 2019, Lieutenant William Rea was assigned the VIN Commander position. Def. LRS at 18 ¶ 64. Lieutenant Rea possessed a law degree, had a less sustained disciplinary record than Plaintiff, and had no discipline involving potential dishonesty. *Id.*

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support

the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

Preliminarily, Plaintiff concedes that summary judgment should enter with respect to each of the Individual Defendants named in Counts One through Nine. Similarly, Plaintiff concedes that the City is entitled to summary judgment on Count Two. The only question remaining is whether summary judgment should enter in favor of the City on Counts One and Counts Three through Ten, and whether Individual Defendants Medina and Watson are entitled to summary judgment on Count Ten.

*Counts One & Seven — Retaliation*

Plaintiff asserts that he was retaliated against in violation of Title VII and Conn. Gen. Stat. § 46a-60. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 41 U.S.C. § 2000e-3(a). Retaliation claims under Title VII and CFEPA are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Hicks v. Baines*, 593 F.3d at 164 (Title VII); *Tucker v. Journal Register East*, 520 F. Supp. 2d 374, 379 n.1 (D. Conn. 2007) (CFEPA). To establish a prima facie case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See id.* at 844 (citation omitted). The plaintiff's burden at the first step is *de minimis* and "the court's role in evaluating a summary judgement request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)) (internal quotation marks omitted); *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d

7

1219, 1224 (2d Cir. 1994) (holding that where direct evidence of an employer's retaliatory intent is absent, district courts must scrutinize the available evidence for circumstantial proof).

The City seeks summary judgment as to these claims on several bases but primarily because, it asserts, there is no factual predicate for any retaliation claim.[4] Def. MSJ Mem. at 53; Def. MSJ Reply at 3. In response, Plaintiff avers that he was removed from his position as Recruitment Division Commander immediately after he reported the sexual harassment complaint by Officer Baerga against Sergeant Rodney to Chief Rosado and Defendant Medina. Pl. MSJ Mem. at 12. The Court agrees with the City.

Plaintiff attempts to muddy an otherwise unambiguous record regarding the timing of his report of the sexual harassment complaint. But he may not do so by asserting facts wholly inconsistent with his prior sworn testimony and allegations.

In his Complaint, Plaintiff alleges that "On or about *the afternoon* of May 29, 2018, [he] met with Chief Rosado and Assistant Chief Medina for a comprehensive conversation. [He] immediately reported the sexual harassment complaint." Pl. Compl. at 5 ¶ 26 (emphasis added). Allegations in a complaint are judicial admissions. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."). Notably, this allegation in the Complaint is also consistent with his sworn affidavit accompanying his Commission on Human Rights and Opportunities ("CHRO") complaint:

> On the morning of Monday, May 29, 2018, I asked Chief Rosado for an opportunity to meet with him about what I considered to be an important matter. He scheduled me for a meeting later that afternoon. *It was my intention to bring the sexual harassment incident to the Chief first thing in the morning, however, he was not able to schedule until the*

---

[4] The City also asserts that the reporting of sexual harassment pursuant to Plaintiff's role as a supervisor does not qualify as a protected activity under Title VII or CFEPA and that the Plaintiff cannot establish that he suffered a materially adverse employment action. Def. MSJ Mem. at 50–52. The Court need not address these arguments in the context of the retaliation claims.

8

> *afternoon. I met with Chief Rosado that afternoon as scheduled, and I told him about the sexual harassment complaint immediately.*

*See* Pl. Dep., Def. Ex. 3A, ¶ 11; Def. LRS at 9 ¶ 32 (emphasis added). Plaintiff also confirmed in his deposition testimony that the meeting with Chief Rosado and Defendant Medina occurred after he was told that he was no longer assigned to the Recruitment Division. Pl. Dep., 201:5-9.

Further, Plaintiff admitted Paragraph 28 of Defendants' Local Rule Statement, which averred that "Plaintiff is familiar with HPD General Order 1.05, that both prohibits harassment on the basis of, inter alia, race, sex, gender identity or expression, sexual orientation or national origin and requires supervisors such as Plaintiff to stop such harassment, report it and take efforts to separate involved employees. . . . *Plaintiff did not report the [sexual harassment] incident until the afternoon of May 29, 2018*." Pl. LRS at 9 ¶ 28.

Plaintiff cannot manufacture a genuine dispute of material fact because he now believes—years after he submitted a sworn affidavit to the CHRO and pleadings to federal court and testified under oath at his deposition—that he might have mentioned the sexual harassment incident when he requested the meeting with Chief Rosado on the morning of May 29, 2018. Indeed, Plaintiff's own 56(a)(2) statement admits that "[l]ater that afternoon on May 29, 2018, Plaintiff first reported that sexual harassment he witnessed to Chief Rosado and Def. Medina." *See* Pl. LRS at 11 ¶ 32. *See Tracey v. Dept. of Social Servs.*, No. 3:17-cv-745 (KAD), 2019 WL 2526299, at *7 (D. Conn. June 19, 2019) (no genuine dispute of material fact when deposition testimony contradicted pleading allegations, "lack[ed] corroboration elsewhere in the record," and was "substantially undermined" by failure to assert allegations in prior proceedings").

As there is no genuine dispute of material fact that Plaintiff was advised, no later than the morning of May 29, 2018, that he was no longer assigned to the Recruitment Division, the

9

reassignment cannot have been in retaliation for a report he had not yet made. The City's motion for summary judgment as to Counts One and Seven is therefore granted.

*Counts Three, Four, & Eight — Race Discrimination*

Plaintiff alleges discriminatory treatment on account of his race in Count Three in violation of Title VII, Count Four in violation of 42 U.S.C. §§ 1981, and Count Eight in violation of Conn. Gen. Stat. § 46a-60.

"Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims under Title VII and CFEPA are also analyzed using the *McDonnell Douglas* burden-shifting framework.[5] See *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The *McDonnell Douglas* test proceeds as follows: (1) plaintiff "bears the minimal burden of setting out a *prima facie* discrimination case," (2) if plaintiff satisfies its burden, plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action," and (3) if the defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

To establish a *prima facie* discrimination case, plaintiff must show: (1) "he belonged to a protected class," (2) "he was qualified for the position," (3) "he suffered an adverse employment

---

[5] "CFEPA claims are analyzed in the same manner as those under Title VII." *Sample v. Wal-Mart Stores, Inc.*, 273 F. Supp. 2d 185, 189 (D. Conn. 2003), *aff'd*, 108 F. App'x 15 (2d Cir. 2004) (summary order), (citing *Brittell v. Dep't of Correction*, 247 Conn. 148, 164 (1998)).

10

action," and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and citations omitted). If a plaintiff does not have direct evidence of discriminatory intent, plaintiff may present evidence of disparate treatment, such as evidence that his employer treated him less favorably than similarly situated employees outside of his protected class, to support an inference of discriminatory intent. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89–90 (2d Cir. 2019) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).

The City seeks summary judgment on the ground that Plaintiff has not established that he was subject to any adverse action. The Plaintiff does not address this argument in his opposition.[6] The Court agrees with the City.

"An adverse [employment] action is a 'materially adverse change' in the terms and conditions of employment." *Pouncey v. Town of Hamden*, No. 3:14-CV-00475 (JAM), 2017 WL 5757740, at *8 (D. Conn. Nov. 28, 2017) (citing *Sanders v. New York City Human Res. Admin.*, 361 F. 3d 749, 755 (2d Cir. 2004)). "To be adverse, the change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks omitted) (citing *Sanders*, 361 F. 3d at 755).

---

[6] As a result, Plaintiff may be deemed to have abandoned these claims. *See Tracey v. Dept. of Social Servs.*, 2019 WL 2526299, at *9 ("Where, as here, a counseled non-moving party submits a 'partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'") (citing *Jackson v. Federal Exp.*, 766 F.3d 189, 195 (2d Cir. 2014). Plaintiff did not respond to the City's argument that Plaintiff suffered no adverse action, a prerequisite to a *prima facie* case of discrimination. Summary judgment on Counts Three, Four and Eight is proper on this basis alone. Notwithstanding, the Court addresses the merits of the City's argument on this issue.

11

Plaintiff alleges that his reassignment out of the Recruitment Division was an adverse employment action. He acknowledges however that this was a purely lateral move that did not affect the terms and conditions of his employment, including his base salary, vacation leave, sick leave, and health and retirement benefits. Def. LRS at 14–15 ¶ 51. Nevertheless, a lateral transfer that does not result in changes to the terms and conditions of employment may constitute an adverse employment if it constitutes a setback to the plaintiff's career. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). Plaintiff, however, "has presented no evidence to show that the transfer was to an assignment that was materially less prestigious, materially less suitable to his skills and expertise, or materially less conducive to career advancement." *Id.*

Although not clear, to the extent Plaintiff relies upon the City's failure to promote him to Captain or VIN Commander as the requisite adverse action, this claim also fails. Plaintiff admits that he was ineligible to be promoted to Captain. Pl. LRS at 5, 15–16 ¶¶ 17, 43, 44. Plaintiff also provides no argument and supplies no evidence to support the claim that the City's failure to promote him to VIN Commander was an adverse employment action and, therefore, any such argument is abandoned. *Tracey v. Dept. of Social Servs.*, 2019 WL 2526299, at *9.

In the absence of any genuine issue of material fact as to whether Plaintiff suffered a cognizable adverse employment action, the City's motion for summary judgment as to Counts Three, Four, and Eight is granted.

*Counts Five, Six, & Nine — Hostile Work Environment*

Plaintiff alleges that he was subjected to a hostile working environment in Count Five in violation of Title VII, in Count Six in violation of § 1981, and in Count Nine in violation of CFEPA. The City avers that he has failed to establish any evidence which would support the rigorous requirements of such claims. Again, the Court agrees with the City.

To prevail on a hostile work environment claim, the plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted).[7] Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* at 374. Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). In addition, "[a] hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (e.g., his [race]), rather than other reasons." *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 326 (D. Conn. 2014).

Plaintiff relies on three distinct events to support his hostile work environment claim: (1) he was told by a co-worker that Defendant Rendock made disparaging remarks about him being an "angry black man" and otherwise disparaging his character as a gang member who had been "picked up" on a wire, (2) he was told by a different co-worker that Defendant Powell also made race-based disparaging statements about the Plaintiff,[8] and (3) Defendant Thody accused the

---

[7] The same standards that apply to hostile work environment claims under Title VII also apply to hostile work environment claims under CFEPA or § 1981. *See Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (CFEPA); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (section 1981).

[8] To the extent Plaintiff was told of these statements, they are admissible as probative of his perceptions regarding his workplace. They are not admissible for their truth, however, as Plaintiff does not offer any evidence, by affidavit or otherwise, regarding these alleged statements. Local Rule 56(a)(3) requires that each denial in an opponent's Local Rule 56(a)(2) Statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3); *Nyack* v. *S. Conn. State Univ.*, 424 F. Supp. 2d 370, 374 (D. Conn. 2006) (A party "cannot rely on inadmissible

Hartford City Council of racism and stupidity because their hiring decisions were not based on merit but only on race.[9]

Whether any of these statements were ever made is disputed. But even accepting that they were made, individually and in combination, they do not establish an objectively hostile work environment because they were neither severe nor pervasive. *See, e.g.*, *Delrio v. Univ. Conn. Health Care*, 292 F. Supp. 2d 412, 423 (D. Conn. 2003) (sporadic comments, some made over a span of eleven years and some not directed to plaintiff directly, are not sufficiently severe or pervasive to support a claim of a hostile work environment); *Ameti, ex rel. United States v. Sikorsky Aircraft Corp.*, 289 F. Supp. 3d 350, 368-69 (D. Conn. 2018) (vague references to discriminatory comments "without providing approximate dates" made it difficult to determine "whether the comments were coupled together on a limited number of occasions or happened separately, and whether the comments were made in a consistent manner," and therefore undermined plaintiff's "claim that they were sufficiently severe and pervasive to alter his work environment*"); Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) ("Because the claimed incidents in the instant case were few in number and occurred over a short period of time, they fail to allege a racially hostile working environment."); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (allegation that co-worker referred to plaintiff as a "stupid Italian" on several occasions held insufficient to support a hostile work environment claim). Here, two of the statements were not even directed at Plaintiff. Plaintiff identifies no personal interactions he

---

hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial.").

[9] Specifically, Plaintiff alleges that on or about November 28, 2017, Defendant Thody, then a captain, told him that "'the City Council only wanted Robert Ford and [the Plaintiff] to advance. He stated that our education didn't mean s###t[] and that us having Master's Degrees [doesn't] mean anything either. He also said that "City Councilmember T.J. Clark was racist and stupid, and he held up his cell phone and threw it across the table and said the City Council would make that black phone a Chief if they could, because it's Black.'" Pl. LRS at 31 ¶ 3 (internal quotation marks omitted).

had during which racial animus was directed at him by any co-workers. Defendant Thody's statement is not itself an obvious expression of racial animus, and Plaintiff offers little else to support his hostile work environment claim.

Because there is insufficient evidence in the record from which a reasonable juror could conclude that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," *Brown* v. *Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 214 (D. Conn. 2017), the City's motion for summary as to Counts Five, Six and Nine is granted.

*Count Ten — Invasion of Privacy Claim*

Plaintiff alleges in Count Ten that the City and Defendants Medina and Watson violated his right to privacy by visiting him in the hospital on one occasion and by otherwise texting or calling him a total of seven times over the course of a month while he was out on sick leave. This claim borders on the frivolous.

Connecticut law recognizes the tort for invasion of privacy, and more particularly, the unreasonable intrusion upon the seclusion of another. *See Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 127–28, 448 A.2d 1317 (1982). To prove unreasonable intrusion upon the seclusion of another, Plaintiff must show "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion of private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Parnoff v. Aquarion Water Company of Conn.*, 188 Conn. App. 153, 172–73, 204 A.3d 717 (Conn. App. 2019); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). "For there to be liability, the defendant's interference with the plaintiff's seclusion must be substantial, must be of a kind that would be highly offensive to a

reasonable person, and must be a result of conduct to which a reasonable person would strongly object." *Id.* at 173 (citing 3 Restatement (Second), Torts § 652B, comment (d)).

"[A]n actor commits an intentional intrusion if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Id.* at 174. With respect to Watson's visit at the hospital, Plaintiff admits that he "did not recall ever providing the hospital with a list of who could visit, or even ever informing the hospital that only certain people could visit," and admits that he "could not remember ever telling [Defendant] Watson or anyone at [] HPD that he did not want visitors" and "did not remember ever asking [Defendant] Watson to leave, informing her he was not accepting visitors or telling her she was not welcome or that she was violating his privacy." Pl. LRS at 14 ¶ 40. Based on the record evidence, no reasonable juror could conclude that Defendant Watson lacked the necessary legal or personal permission to visit him in the hospital to help him fill out FMLA paperwork.

Plaintiff also cannot show that there was an actual intrusion upon his "solitude or seclusion or private affairs or concerns." *Parnoff*, 188 Conn. App. at 175. Plaintiff did not refuse to see Defendant Watson. Pl. LRS at 14 ¶ 40. Indeed, that same day, Plaintiff was visited by two other HPD officers. Pl. LRS at 14 ¶ 39. Nor can Plaintiff show that Defendant Watson's visit and occasional text messages and phone calls over the course of a month would be "highly offensive to a reasonable person." *See Lynn v. Allied Corp.*, 41 Ohio App. 3d 392, 401–02, 536 N.E. 2d 25 (1987) (no intrusion upon the seclusion of another when employer called plaintiff at hospital after surgery about early retirement program because employer was "merely carrying out their obligation to provide all eligible employees with the opportunity to participate" in early retirement program in an informative and "businesslike manner," and if plaintiff was "too ill to accept telephone calls she would not have had a telephone in hospital room"). It is not unreasonable for

an employer to stay in occasional contact with an employee who is out sick, and an employer should not risk tort liability as a result of such efforts. And here, once Plaintiff communicated to Defendant Watson that he was not feeling well enough to talk, she ceased texting him. Def. LRS at 15 ¶ 42. Accordingly, no reasonable jury could find that one hospital visit and a handful of texts and phone calls over the course of a month are of such persistence or frequency to impose a substantial burden on Plaintiff's privacy.

As to Defendant Medina, Plaintiff did not respond to the argument that Defendant Medina did not order Defendant Watson to visit him in the hospital to complete the FMLA paperwork and did not order Defendant Watson to contact him via text message or phone calls. The claim against Defendant Medina in Count Ten is abandoned. *Tracey v. Dept. of Social Servs.*, 2019 WL 2526299, at *9. The City's motion for summary judgment as to Count Ten is granted.

**Conclusion**

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Defendants and to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of December 2022.

  /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE